UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

WENDY F.,[1]

       Plaintiff,

  v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____

6:21-CV-06077-LJV
DECISION & ORDER

On January 27, 2021, the plaintiff, Wendy F. ("Wendy"), brought this action under the Social Security Act ("the Act").  She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled.[2]  Docket Item 1.  On December 23, 2021, Wendy moved for judgment on the pleadings, Docket Item 6; on May 12, 2022, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 7; and on June 23, 2022, Wendy replied, Docket Item 10.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Wendy applied for Supplemental Security Income ("SSI"), which is paid to a person with a disability who also demonstrates financial need.  42 U.S.C. § 1382(a).  A qualified individual may receive both Disability Insurance Benefits ("DIB") and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs.  See 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court denies Wendy's motion and grants the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

**DISCUSSION**

I.   **ALLEGATIONS**

Wendy argues that the ALJ erred in two ways.  See Docket Item 6-1.  First, she argues that the ALJ improperly evaluated the opinion of a consultative examiner, Yu-Ying Lin, Ph.D.[4]  See id. at 17-21.  Second, Wendy argues that the ALJ's RFC[5] determination was unsupported by substantial evidence because it was based on the ALJ's own lay interpretation of the evidence.  See id. at 21-24.  This Court disagrees and therefore affirms the Commissioner's finding of no disability.

II.  **ANALYSIS**

  **A. Dr. Lin's Opinion**

For claims filed before March 27, 2017, such as Wendy's, the ALJ must evaluate every medical opinion submitted, regardless of its source, "together with the rest of the relevant evidence" in the case record.  20 C.F.R. § 416.927(b)-(c).  In evaluating the opinion of a consulting physician who does not have a treating relationship with the claimant, the ALJ considers, inter alia, the examining relationship, the amount of

---

[4] The ALJ's evaluation of Dr. Lin's opinion was the basis of a prior remand order by another judge of this Court in 2019.  See Docket Item 5 at 543-51; Flores v. Comm'r of Soc. Sec., 2019 WL 6695838, at *5 (W.D.N.Y. Dec. 9, 2019) (Skretny, J.) (finding error when ALJ failed to "discuss the weight, if any, he gave to Dr. Lin's opinion regarding [Wendy's] 'marked' limitations in dealing with stress").

[5] A claimant's residual functional capacity ("RFC") "is the most [she] can still do despite [her] limitations . . . in an ordinary work setting on a regular and continuing basis."  Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (Jul. 2, 1996)).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  Id.

3

relevant evidence the source presents to support the opinion, the consistency of the opinion with the record as a whole, and the source's specialization. *See id.* § 416.927(c)(1)-(6). Even though the opinions of consulting physicians "are not entitled to controlling weight, in the absence of a controlling treating physician opinion, such opinions take on particular significance." *Montanez v. Berryhill*, 334 F. Supp. 3d 562, 564 (W.D.N.Y. 2018) (quoting *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 295 (W.D.N.Y. 2006)) (internal quotation marks and alteration omitted).

On September 2, 2014, Dr. Lin performed a consultative examination. *See* Docket Item 5 at 233-36. Dr. Lin opined, among other things, that Wendy was markedly limited in her ability to appropriately handle stress due to anger issues. *See id.* at 236. Dr. Lin concluded that "[t]he results of the examination appear to be consistent with psychiatric problems, and this may significantly interfere with [Wendy's] ability to function on a daily basis." *Id.*

The ALJ afforded little weight to Dr. Lin's opinion that Wendy had a marked limitation in handling stress. *See id.* at 408 ("I accord some weight to the evaluation[] of Dr. Lin . . . to the extent that [it] identif[ies] [a] moderate restriction in [Wendy's] ability to interact with others; however, the marked limitations identified by Dr. Lin are accorded little weight."). The ALJ found that opinion to be inconsistent with Wendy's history of conservative treatment. *Id.* And the ALJ explained that "[w]hile examinations indicated mood/affect issues, further behavioral and cognitive deficits were not generally identified[,] and [Wendy] acknowledged the ability to perform a range of activities of daily living despite her psychiatric symptoms." *Id.*

Wendy claims that the ALJ's reasoning for rejecting Dr. Lin's stress limitation was conclusory because he provided "no citation or explanation."  Docket Item 6-1 at 18. Elsewhere in his decision, however, the ALJ provided detailed explanations of, and citations to, Wendy's conservative treatment, lack of any behavioral or cognitive deficits beyond mood or affect issues, and ability to perform a range of daily activities.  *See, e.g.*, Docket Item 5 at 407 ("Despite [Wendy's] reported symptoms her treatment during the period at issue was generally limited to counseling and medication management (Exhibits 5F, 6F, 11F, 12F, 15F)."); *id.* ("Significantly, examinations documented in progress notes revealed anxious/depressed mood with intermittently constricted affect; however, [Wendy] generally exhibited appropriate behavior, intact memory, and fair/good concentration (Exhibits 6F/5, 26, and 29, 7F/3-8, 12-22, 25-31, 33, 36, 41, 44-45, 48-49, 52-53, 56-67, 64-65, 68-69, 77, 89, 94, 98 and 101, 10F/11, 20, 41, 45, 56-57, 60-61, 68-69, 73, 86, 131, 177, and 200, 12F/13, 29, 47-48, and 73-74, 13F/7, 18-19, 23, and 31).").  Moreover, the ALJ explicitly rejected Dr. Lin's finding of a marked limitation in Wendy's ability to appropriately handle stress, and supported that conclusion with citations to the record, at step three.  *See id.* at 406.

An ALJ can discount or reject an opinion in one part of a decision and provide the reasoning and record support for that evaluation elsewhere.  *Cf. Mangual v. Comm'r of Soc. Sec.*, 600 F. Supp. 3d 313, 329 (S.D.N.Y. 2022) ("[W]hile the ALJ did not separately discuss Mangual's capacity to regulate emotions, control behavior, and maintain well-being in his discussion of Dr. Schaich and Dr. Broska's opinions, the ALJ elsewhere in his decisions provided reasons for his finding that Mangual was only mildly limited in this area."); *see also Sloan v. Colvin*, 24 F. Supp. 3d 315, 325 (W.D.N.Y.

2014) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)) ("Although the ALJ did not explicitly follow all of the factors of SSR 06-03p in rejecting the nurse practitioner opinion, she did explain her rejection with enough specificity to make it clear to a reviewer of the record her reasons for rejecting the opinion."). That is what the ALJ did here.

What is more, the ALJ gave good reasons for rejecting Dr. Lin's opinion about the limitations caused by Wendy's reaction to stress. As mentioned above, the ALJ found that a marked limitation in stress was inconsistent with Wendy's history of conservative treatment, a lack of behavioral and cognitive deficits aside from mood/affect issues, and her admitted ability to perform activities of daily living. *See* Docket Item 5 at 408. While the ALJ provided supporting citations elsewhere in his decision, these reasons were nevertheless sufficient for the Court to ensure that the substance of the treating physician rule had not been traversed. *See, e.g.*, *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019).

Therefore, the ALJ properly considered Dr. Lin's opinion, and affording little weight to the opinion insofar as it found a marked limitation in managing stress was not error.

### B. The ALJ's RFC Determination

Wendy also argues that the ALJ impermissibly relied on his own lay opinion in crafting her RFC.[6] *See* Docket Item 6-1 at 21-24.

---

[6] The ALJ concluded that Wendy had the RFC to perform a full range of work at all exertional levels but could have only occasional interaction with coworkers and the public. Docket Item 5 at 406.

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *accord Nora A. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d 85, 93 (W.D.N.Y. 2021). That does not mean that the RFC needs to "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision." *Matta*, 508 F. App'x at 56. But the ALJ is not a medical professional and therefore is "not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 590 (W.D.N.Y. 2018); *see Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). For that reason, generally speaking, "an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (citations omitted); *see also Richardson v. Comm'r of Soc. Sec.*, 339 F. Supp. 3d 107, 117 (W.D.N.Y. 2018) ("While in some circumstances, an ALJ may make an RFC finding without treating source opinion evidence, the RFC assessment will be sufficient only when the record is clear and contains some useful assessment of the claimant's limitations from a medical source.") (internal quotation marks and citation omitted).

Wendy asserts that the ALJ's rejection of Dr. Lin's finding of a marked limitation in her ability to appropriately handle stress resulted in an RFC determination supported only by the ALJ's lay interpretation of the record without the benefit of a medical opinion. *See* Docket Item 6-1 at 23-24. But the ALJ did not rely solely on Dr. Lin's opinion to formulate Wendy's RFC; he also used the opinion of a state consultative examiner, K. Lieber-Diaz, Ph.D.; Wendy's testimony at the hearing; and objective treatment records to support his conclusions. *See* Docket Item 5 at 407-09; *see also Cichocki v. Astrue*,

7

729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is not necessary "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

For example, the ALJ considered Wendy's subjective testimony and activities of daily living.  *See* Docket Item 5 at 407 ("According to [Wendy], she is unable to engage in sustained work activity due to psychiatric symptoms that include paranoia, difficulty getting along with others, problems controlling her anger, concentration deficits, difficulty completing tasks, loss of usual interest[s], crying spells, and panic symptoms (Exhibits 4E, 3F, 7F/35 and 39, Hearing Testimony).").  He also considered Wendy's medical records, which showed a history of conservative treatment and normal examinations except for some mood/affect issues.  *See id.* at 407-08.  And he considered the opinions of Dr. Lin and Dr. Lieber-Diaz, even if he rejected portions of those opinions.  *See id.* at 408-09.  So the ALJ did not improperly rely on his own lay opinion in crafting Wendy's RFC.

Wendy also suggests that the ALJ did not properly account for her stress in her RFC.  *See* Docket Item 6-1 at 21. But an RFC determination can account for a claimant's stress even without an explicit stress limitation.  *See Herb v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 441, 447 (W.D.N.Y. 2021).  And the RFC here did just that.

Wendy correctly notes that "stress is highly individualized, [and] mentally impaired individuals may have difficulty meeting the requirements of even so-called low-stress jobs."  See Docket Item 6-1 at 19 (quoting *Collins v. Colvin*, 2016 WL 5529424, at *3 (W.D.N.Y. Sept. 30, 2016); *see also Stadler v. Barnhart*, 464 F. Supp. 2d 183, 188-

8

89 (W.D.N.Y. 2006) (quoting SSR 85-15, 1985 WL 56857, at *6 (Jan. 1, 1985)).  And Wendy is likewise correct that "the ALJ must therefore make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and those factors that affect [her] ability to work."  See Docket Item 6-1 at 19 (quoting *Collins*, 2016 WL 5529424, at *3).  But that does not mean that whenever a medical opinion mentions the word "stress," the ALJ must analyze stress in detail.

As noted above, the ALJ rejected Dr. Lin's opinion that Wendy had a marked limitation in appropriately managing stress, and he gave good reasons for doing so.  For example, the ALJ based his conclusion on Wendy's "mental status examinations documented in progress notes [that] did not generally indicate behavioral or cognitive deficits beyond anxious/depressed mood and constricted affect," Docket Item 5 at 407, as well as Wendy's history of conservative treatment and ability to perform a range of activities of daily living, *id.* at 408.  And the ALJ relied on the opinion of another consultant, Dr. Lieber-Diaz, as well.  *See id.* at 408 ("In contrast, K. Lieber-Diaz Ph.D., . . . concluded that [Wendy] would have no more than moderate work-related mental restriction[s] (Exhibit 1A).  More specifically, Dr. Lieber-Diaz concluded that her symptoms did not prevent her from performing the mental requirements of unskilled work in a low contact setting.").

Finally, contrary to Wendy's assertion, the ALJ did address her stress issues in the RFC by limiting her to only occasional interaction with coworkers and the public.  *See* Docket Item 5 at 406.  Dr. Lin found that Wendy's problem handling stress was the result of anger issues.  *See id.* at 236.  The ALJ accepted Dr. Lin's conclusion that Wendy's stress was caused by her anger issues, *id.* at 406, 408, and that determination

was supported by Wendy's history of fighting, inability to trust others, and other antisocial behavior.  *See, e.g.*, *id.* at 43, 48, 165, 233-34, 317, 321.  So by limiting Wendy to only occasionally interacting with others, the ALJ indeed addressed what might trigger her stress.

In sum, the ALJ's RFC determination was supported by substantial evidence and free from legal error.  Therefore, because the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole," the ALJ's RFC determination was supported by substantial evidence, and this Court will not second-guess it.  *Matta*, 508 F. App'x at 56.

## **CONCLUSION**

The ALJ's decision neither was contrary to the substantial evidence in the record nor did it result from any legal error.  Therefore, and for the reasons stated above, Wendy's motion for judgment on the pleadings, Docket Item 6, is DENIED, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 7, is GRANTED.  The complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated:     March 16, 2023
           Buffalo, New York


                                              */s/ Lawrence J. Vilardo*
                                              LAWRENCE J. VILARDO
                                              UNITED STATES DISTRICT JUDGE